**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **TYLER TECHNOLOGIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:14-cv-00150** |
| | § | |
| **VBCONVERSIONS LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**MOTION TO DISMISS (RATHER THAN EXERCISE DISCRETIONARY
JURISDICTION UNDER 28 U.S.C. § 2201) OR, IN THE ALTERNATIVE, TO
TRANSFER VENUE UNDER  28 U.S.C. § 1404(a)**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant VBConversions LLC ("VBC"), and hereby moves, by and through its attorneys of record, to dismiss the Complaint for Declaratory Judgment of Non-Infringement filed by Plaintiff Tyler Technologies, Inc. ("Tyler") in this Action or, in the alternative to transfer the Action to the Central District of California, and for cause of action would respectfully show unto the Court the following:

## I.      INTRODUCTION

1.  This Motion is made on two independent bases:

**A.      This Action was an "Anticipatory" Filing made for the Purpose of Forum Shopping**

2.  While first-filed, this Action is the very definition of an "anticipatory" filing for the improper purpose of forum shopping on the part of Tyler.

3.  VBC's first letter to Tyler advised Tyler in detail of the basis of VBC's copyright claims against it.  The letter also made clear that if a settlement could not be reached quickly, VBC would file suit.  VBC, however, offered Tyler ten days to investigate VBC's allegations.  Tyler twice requested extensions of that time, which VBC granted.  Each time, Tyler promised that, at

the completion of its investigation, it would provide a substantive response. Instead of providing that response, however, on the day the second extension was to expire, Tyler, without any warning, filed this action.  This rush to the courthouse in order to gain tactical advantage and a forum of Tyler's choosing is grossly inappropriate and punishes VBC for attempting to reach a settlement of the dispute without court involvement.  VBC is entitled to its choice of venue as the true Plaintiff in this dispute.

4.   The Court, therefore, should decline to exercise its discretionary jurisdiction under 28 U.S.C. § 2201 and, instead, dismiss the action in favor of VBC's second-filed action now pending in the District Court for the Central District of California.

**B.     The Agreement Governing the Dispute included a Valid Forum-Selection Clause Specifying the Central District of California as the Appropriate Forum**

5.   This copyright infringement action arises from violation of an End-User-License-Agreement ("EULA") entered into between the parties and that EULA contained a valid, enforceable forum-selection clause designating the Central District of California as the forum for any dispute among the parties.

6.   If it chooses not to dismiss the Action outright, the Court, therefore, should transfer this Action to the Central District of California under 28 U.S.C. § 1440(a).

7.   The Court can and should dispose of this Action on either one of those bases.

## II.     FACTUAL BACKGROUND

**A.     The Copyrighted Software**

8.   VBC is the owner of all rights in, and publisher of, the computer program *VB.Net to C# Converter* (the "Copyrighted Software") which is used by computer programmers to assist in translating software developed in the language Visual Basic into the programming language C# (pronounced "C-Sharp").  (Affidavit of David Crook In Support of Motion to Dismiss, ¶ 4.)  The

copyright in the Copyrighted Software has been registered with the Register of Copyrights, as was a transfer vesting VBC with al rights in and to the Copyrighted Software.  (*Id.*, ¶ 5, Exhs. A, B.)

9.   The Copyrighted Software is distributed under the "trialware" model, whereby an interested user is permitted to download a time-and-feature-limited version of the Copyrighted Software in order to test it to see if it is suitable for his or her needs.  (*Id.*, ¶ 6.)  On first running the program, the user is presented with the EULA which sets forth the limitations in the trialware version and the obligation to purchase a license if the user wishes to unlock the full version for use beyond those limitations.[1]  (*Id.*, ¶ 7, Exh. "C".)  If the user purchases such a license, VBC provides an "unlock" code, or "key" to enable the full functioning of the Copyrighted Software.  (*Id.*)

10.  Unfortunately, over the years, a broad array of so-called "cracking sites" have appeared on the internet that are capable of generating—for unscrupulous users—unauthorized unlock codes for the Copyrighted Software (and many other shareware programs offered in the trialware model) without the site or the unscrupulous user paying the required license fee.  (*Id.*, ¶ 8.)  In order to combat this problem, VBC collects certain information from a user's computer each time a copy of the Copyrighted Software is used. [2]  (*Id.*, ¶ 9.)

**B.    <u>Tyler's Acceptance of the EULA and its Forum-Selection Clause</u>**

11.  On or about October 17, 2011 at approximately 9:30a.m. CST, a user employed by Tyler, (believed to be named "Sayed Muhhamad Fahad") installed and launched the capability-limited

---

[1] The text of the EULA is automatically presented on screen to the user.  The user need not perform any additional steps to access the text of the EULA. (*Id.*)

[2] The EULA provides that the Copyrighted Software will transmit various details of its use to VBC's servers in order for VBC to monitor compliance with the EULA. In accepting the EULA, the user grants VBC permission to collect this information and forward it to VBC's servers. (*Id.*, ¶ 7, Exh. "C".)

copy of the Copyrighted Software on a computer operating on Tyler's network. (*Id*., ¶ 10.)  The user was presented with and accepted the EULA.  (*Id*.)

12. The EULA, presented to and accepted by Tyler's employee on its behalf, states in relevant part:

> **7. APPLICABLE LAW.** In any dispute arising out of or relating to this Agreement, it is agreed and acknowledged that the proper venue for resolution shall be either the Superior Court for the County of Los Angeles or the United States District Court for the Central District of California. This license shall be deemed to have been executed within the State of California, in the United States of America. It shall be construed and enforced in accordance with and governed by the laws of the State of California without regard to conflicts of laws principles thereof. The parties hereto expressly agree to be subject to the personal jurisdiction of the above mentioned courts.  The application of UCITA and United Nations Convention on Contracts for the International Sale of Goods is expressly excluded.

(*Id*., ¶ 7, Exh. C.)

## C.    Tyler's Infringement

13. The EULA specifically bars the use of illicit keys.[3]  Nevertheless, after accepting the EULA the user—Tyler's apparent employee—proceeded to register the program as though a valid license had been purchased from VBC, but used an unauthorized key.   When asked to enter the key he had purchased from VBC, he instead entered "P0S65-80U92-DJ239-2500H-5Q828".  (*Id*., ¶ 11.)   While this is a technically-valid key which will serve to unlock the Copyrighted Software, it belongs to a user in Quebec, Canada who purchased it in 2007.  (*Id*., ¶ 12.)   Under the terms of he EULA, that license and corresponding unlock code were non-

---

[3] Section 14 of the EULA states, in relevant part: "Using illegally generated keys to unlock the software is also a violation of VBC's rights. You agree to only use Registration keys generated online from VBC's website, only use registration keys emailed to you by VBC or our third party order processing Company. You agree that using an illegal or fraudulent registration key to register or unlock the software or reverse engineering, decompiling or disassembling the software makes that software copy illegal and unauthorized and in violation of VBC's rights." (*Id*., ¶ 7, Exh. "C".)

transferable and cannot have been legally conveyed to Tyler or the user.  (*Id.*, ¶ 7, Exh. "C".)  On information and belief, this code has either been stolen or reverse engineered and published on a crack site, as it has been encountered in numerous infringements.  (*Id.*) It is evident that, with the purpose of avoiding paying the licensing fee for the Copyrighted Software, the user searched the Internet and illicitly acquired this code which he then entered into the registration system.

14. The use of such a key amounts to a circumvention of technological measures in place to control access to the full version and, therefore, is a direct violation of the DMCA.  Further, once the terms of the EULA were violated, any license from VBC to the user and Tyler was revoked, and any subsequent copies of the Copyrighted Software made—including in-memory copies made when the Copyrighted Software was run—were unauthorized.

15. Over the next few days, the user made unauthorized use of the Copyrighted Software (and, in the process, unauthorized in-memory copies of it) at least 132 times to convert at least 2,593,824 lines of Visual Basic code to generate at least 3,246,143 lines of C# code.  (*Id.*, ¶ 13.)

**D.**   **VBC's Demand Letter, its Extensions of Time for Tyler to Investigate, and Tyler's Anticipatory Filing**

16. On or about February 6, 2014, VBC's counsel sent a demand letter to Tyler's General Counsel outlining the details of Tyler's infringement and VBC's demand.  (Tyler's Complaint Herein, Exhibit 1.)   The letter made clear that VBC intended to file an infringement suit if a satisfactory settlement was not forthcoming quickly. (*Id.* ("Thus, if this matter proceeds to litigation, VBC will conduct extensive discovery sufficient to ascertain what profits accrued to Tyler as a result of Tyler's infringing usage and other infringing acts of Tyler"); *Id.* ("Please be advised that, should Tyler force VBC to proceed with litigation, the $135,000 demand will be withdrawn and VBC will not settle in the future for less than that amount"); *Id.* ("We further remind you of Tyler's obligation to put in place a Litigation Hold on all data, writings or

documents of any kind or nature that may, in any way, be related to the matters set forth elsewhere in this letter"); *Id*. ("We appreciate that you will need time to verify the information we have provided here with Tyler's IT staff and otherwise collect relevant information.  Therefore, we would request that you provide us with a response within ten days from the date of this letter").)

17. On or about February 13, 2013, Tyler's outside counsel responded with a letter indicating that Tyler and its counsel needed more time to complete their investigation, but would provide a substantive response when the investigation was completed.  (Tyler's Complaint Herein, Exhibit 2 ("We will send you a substantive response to your letter when our client has completed its investigation.").)   VBC's counsel responded promptly by e-mail offering an extension until February 28, 2014 for Tyler to respond.  (Tyler's Complaint Herein, Exhibit 3.)   On or about February 27, 2013, Tyler's outside counsel sent an email requesting further time for Tyler to complete its investigation and again promising a substantive response when the review was completed. (Tyler's Complaint Herein, Exhibit 4 ("My client has been diligently conducting an investigation into the allegations in your February 6 letter, but it will need some additional time to complete its review.  Accordingly, we are not in a position to send you a response tomorrow, but will provide you with a substantive response when the review has been completed.").)  VBC's counsel responded that, while VBC was concerned and confused by the delay, it would grant a further limited extension, but that "If we don't make progress by next week, we will have no choice but to file our lawsuit."  (Tyler's Complaint Herein, Exhibit 5.)   Tyler's counsel responded the next day that Tyler expected to "provide a written response no later than March 14."  (Affidavit of Joshua S. Hodas, Esq. In Support of Motion to Dismiss, ¶ 4, Exh. 1.)

18. On that date, March 14, 2014, Tyler—having made no further contact with VBC and without providing the "substantive response" it had promised three times or ever having

intimated any intention of making its own filing—filed its Declaratory Judgment Complaint in this action and informally served it on VBC along with a request for waiver of service. (*Id.*, ¶ 5.) On March 19, 2014, VBC filed its Complaint for copyright infringement in the Central District of California.  (*Id.*, ¶ 6, Exh. 2.)

### III.   ARGUMENT

**A.   TYLER's Complaint Should be Dismissed in Favor of VBC's Action Pending in its Chosen Venue of the Central District of California Because Tyler's Filing was Clearly Anticipatory for the Improper Purposes of "Forum Shopping"**

1.   Actions for Declaratory Judgment are a Key Exception to the General Policy that the First Party to File an Action has Priority in the Choice of Venue

19. Where two actions related to the same dispute are filed in different venues, the first-filed action is generally accorded priority and the second-filed is dismissed or transferred.  *Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971).   A key exception to this rule occurs when the expected defendant in a dispute files a suit for declaratory judgment against the true plaintiff in an attempt to obtain a more favorable forum. As a court in this District has stated:

> The reason that many courts have disallowed use of a declaratory judgment action to establish venue is found in the underlying purposes of the Declaratory Judgment Act (the "Act"), codified at 28 U.S.C. § 2201. The Act was intended to provide a remedy which would "minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued." In *Koch Engineering Company, Inc. v. Monsanto Company*, 621 F. Supp. 1204, 1206 (D.C. Mo. 1985), the court rejected the first-to-file rule, holding that the plaintiff's suit was no more than a race to the courthouse, and that it furthered none of the purposes of a declaratory judgment action. Rather, it denied the injured party the right to choose the forum in which to seek redress. *Id.* at 1207 . . . . *Koch* concluded that the interests of comity and judicial economy would best be served by dismissing the prior suit for declaratory judgment. *Id.* at 1205.

> In another declaratory judgment case, *Tempco Electric Heater Corporation v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir. 1980), the court also deferred to the later-filed infringement action, stating that:

> The mere fact that Tempco filed its declaratory judgment action first does not give it a "right" to choose a forum . . . As we have noted before, "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or choose a forum." (Citation omitted). "The federal declaratory judgment is not a prize to the winner of the race to the courthouse." (Citation omitted).

> The *Tempco* court went on to state that while a first-to-file rule would have the virtue of certainty, "the cost - a rule which will encourage an unseemly race to the courthouse and quite likely numerous unnecessary suits - is simply too high." *Id*.

*Texas Instruments, Inc. v. Micron Semiconductor, Inc*., 815 F. Supp. 994, 998 (E.D. TX. 1993) (internal citations omitted); *see also Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th Cir. 1985) ("This Court has stated that a proper factor to consider in dismissing a declaratory judgment suit is whether the suit was filed in anticipation of another and therefore was being used for the purpose of forum-shopping.") (*citing Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 & n. 3 (5th Cir. 1983); accord *Ven-Fuel, Inc. v. Dep't of Treasury*, 673 F.2d 1194, 1195 (11th Cir.1982).)

20. When an injured party grants the prospective defendant time to conduct an investigation and discuss settlement, to allow that defendant to use the time, instead, to prepare and file a declaratory judgment complaint would violate the strong public policy promoting settlement. *Mill Creek Press, Inc v. Thomas Kinkade Co.*, 2004 U.S. Dist. LEXIS 31100 at *29-30 ("[A]pplication of the first-to-file rule in this instance would penalize [the injured party] for its attempt to make a good faith effort to resolve this dispute out of court. *See Merle Norman Cosmetics v. Martin*, 705 F. Supp. 296, 299 (E.D. La. 1988) ('Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing . . . .')").

2.      Legal Standard

21. Faced with a motion to dismiss a first-filed declaratory judgment action in favor of a second-filed affirmative infringement action, the court must determine whether to exercise its discretion to dismiss the suit.  The Fifth Circuit has identified seven factors—referred to as the *Trejo* factors—for a court to consider when making this determination:

> (1)  whether there is a pending state action in which all of the matters in controversy may be fully litigated;

> (2)  whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

> (3)  whether the plaintiff engaged in forum shopping in bringing the suit;

> (4)  whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

> (5)  whether the federal court is a convenient forum for the parties and witnesses;

> (6)  whether retaining the lawsuit would serve the purposes of judicial economy; and

> (7)  whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Mill Creek Press, Inc.*, 2004 U.S. Dist. LEXIS 31100 at *16-17 (citing *Sherwin-Williams Company v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003) (quoting *St. Paul Insurance Company v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994)).)

22. While the Court must evaluate these factors, where a first-filing is clearly anticipatory, that may be treated as a dominant factor in the evaluation. *See Mill Creek Press*, 2004 U.S. Dist. LEXIS 31100 at 22-23 ("Courts will generally not allow a party to select its preferred forum by filing an action for a declaratory judgment when it has notice that another party intends to file suit involving the same issues in a different forum.") (citing *909 Corporation v. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990)); *see also Lexington Ins. Co. v. Rolison,* 434 F. Supp. 2d 1228 ("While not dispositive, the fact that

Lexington filed an anticipatory declaratory judgment action . . . immediately upon learning that Rolison was planning a lawsuit of his own favors abstention. *See Manuel,* 430 F.3d at 1137 (district court does not abuse discretion by dismissing declaratory judgment action in reliance on fact that action was filed in apparent anticipation of another proceeding)"); *see also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d at 602 ("[T]here can really be no dispute that Mission expected Puritan to file suit if its claim was denied, and this suit was in anticipation of that expected action. The district court therefore acted within its discretion in considering the anticipatory nature of this suit.")

       3.      <u>The *Trejo* Factors Clearly Indicate that Tyler's Anticipatory Declaratory Judgment Filing Should be Dismissed in Favor of VBC's Infringement Action</u>

       (a)     The First and Seventh *Trejo* Factors do not Apply

23. The first and seventh *Trejo* factors address a choice between state and federal venues. This situation does not apply here, where both actions are federal.

       (b)     Tyler Unquestionably Filed Suit in Anticipation of Abbott's Filing and the Second *Trejo* Factor Clearly Support Dismissal

24. Tyler's filing is the very definition of an anticipatory suit.  Moreover, Tyler deliberately misled VBC as to its intentions in order to obtain time to make its filing.  This behavior cannot be rewarded. Tyler's Action should be dismissed in favor of VBC's infringement Action.

25. Evaluating facts nearly identical to those here, the court in *Puritan Fashions* clearly endorsed dismissal.  *Puritan Fashions Corp.*, *supra*, 706 F.2d 599**.**  In that case, Mission requested in December 1981 that Puritan delay its suit while Mission investigated Puritan's allegations (and offered to toll the statute of limitations in return).  *Id.* at 600-01.  Mission promised "a written statement of its position" when the investigation was complete.  *Id.* Approximately six weeks later, Mission reiterated that Puritan would have "30 days to commence suit from the time of receipt of Mission's written position statement."  Instead of

providing that written position statement, Mission filed a declaratory-judgment suit shortly thereafter.  The Appeals Court ruled that "these facts alone would be enough to support a finding of anticipatory filing [and dismiss the case]." *Id*.

26. Tyler's actions here directly mirror Mission's.  Tyler specifically requested not once, but twice that VBC grant it additional time to investigate VBC's allegations.  Each time, Tyler specifically promised it would provide "a substantive response" when it completed its investigation. Then, without providing the promised response (or otherwise communicating with VBC) Tyler rushed to the courthouse steps with its declaratory-judgment Complaint.

27. Tyler's filing was clearly anticipatory, and this factor clearly mandates dismissal.  For the Court to do otherwise would be to reward Tyler for its deceptive behavior and to punish VBC for "its attempt to make a good faith effort to resolve this dispute out of court." *Mill Creek Press,* 2004 U.S. Dist. LEXIS 31100 at *29-30.

(c)    Tyler Clearly Engaged in Forum Shopping and the Third *Trejo* Factor Clearly Supports Dismissal

28. There can be no question, either, that the purpose of Tyler's anticipatory filing was forum shopping. Both pending actions are (and Tyler knew they would both be) in federal courts in large sophisticated circuits.  There is no substantial difference between the procedures, law, time to judgment or other factors that favor one district over the other.  Further, as discussed below, Tyler cannot even argue greater convenience for itself in this District. Nor was Tyler facing a lengthy period of uncertainty over VBC's intent as would otherwise justify its seeking declaratory judgment (in the venue of its choosing).  Therefore, the Court can and should conclude that the sole reason for Tyler's filing was to secure a "home court advantage" in the District in which it resides.

29. The *Trejo* factors disfavor such forum shopping and the third factor therefore argues strongly for dismissal.

        (d)     To allow Tyler to Benefit from its Deception and Punish VBC for Attempting to Resolve the Dispute Without Suit would be Inequitable and the Fourth *Trejo* Factor Clearly Supports Dismissal

30. As discussed above, Tyler actively misled VBC as to its intentions by requesting extensions of time to conduct its investigations and, instead of providing the substantive response it promised, simply filing this action without notice.  If the Court were to allow Tyler to benefit from its deceptive behavior and to punish VBC for "its attempt to make a good faith effort to resolve this dispute out of court" this would clearly lead to an inequitable result.  The fourth *Trejo* factor therefore argues strongly for dismissal.

        (e)     This District is not a Convenient Forum for Either Party and the Fifth *Trejo* Factor Therefore Supports Dismissal

31. The fifth *Trejo* factor is actually intended to distinguish the convenience of federal versus state venues and therefore, like the first and seventh factors, does not apply in this case.  Some courts, however, use this factor to evaluate the ordinary convenience factors related to venue.

32. While Tyler is headquartered in this District, the acts of infringement alleged by VBC took place in Tyler's facilities in Illinois.  The employee who carried out the infringement (though, according to Tyler, no longer employed by Tyler) appears still to reside in Illinois, and other Tyler witnesses such as supervisors, Information Technology personnel who manage the local computer network, etc. are likely to be located primarily in Illinois.  VBC's percipient witnesses reside in California and Missouri.  Thus, this District is convenient for neither party, and the Central District of California where VBC has filed its action is more convenient for VBC.

33. The fifth *Trejo* factor, therefore argues for dismissal.

        (f)     Retaining the Lawsuit in this District Neither Serves nor Disserves the Purposes of Judicial Economy and the Sixth *Trejo* Factor is Neutral

34. This case is at its very earliest stage.  Indeed, this Motion is likely the first time the Court will take note of the case.  As such, the Court has expended almost no resources on the case and dismissing the case in favor of VBC's action pending in the Central District of California will result in no waste of judicial resources.

35. The sixth *Trejo* factor is, therefore, neutral.

*        *        *

36. Of the five *Trejo* factors that apply in this case, three strongly favor dismissal, one favors dismissal, and one is neutral.  The Court, therefore, should dismiss this case in favor of the one pending in VBC's chosen forum of the Central District of California.

**B.**     **In the Alternative, this Action Should be Transferred to the Central District of California Because the EULA Entered into by Tyler Specifies that Forum as the Proper one for any Litigation Arising from Tyler's use of VBC's Software**

      1.     <u>The Supreme Court has Ruled that, where there is a Valid Forum Selection Clause, a Motion to Transfer Should be Granted in all but the Most Exceptional Cases</u>

37. In a recent decision, the Supreme Court made clear that—when a contract between the parties includes a forum-selection clause that governs a dispute, but a party to the contract files an action in a forum other than the one designated in the contract—a motion under 28 U.S.C. § 1404(a) (as opposed to a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3)) is the proper means to enforce the forum selection clause.  *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. – ; 134 S. Ct. 568, 580 (Dec. 3, 2013) ("§1404(a) and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms").

38. At the same time, however, the Supreme Court also made clear that the ordinary framework for evaluating a motion under § 1404(a) should **not** be used when the motion is made to enforce a forum-selection clause in a contract between the parties.  *Atlantic Marine Construction Co.,* 134 S. Ct. at 581 ("In the typical case not involving a forum-selection clause, a

district court considering a §1404(a) motion . . . must evaluate both the convenience of  the parties and various public-interest considerations . . . and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.' §1404(a). The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which . . . '[should be] given controlling weight in all but the most exceptional cases'")  (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).

39. "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. **Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion to transfer be denied.**" *Atlantic Marine Construction Co.,* 134 S. Ct. at 581 (emphasis added).

40. Courts in this Circuit regularly enforce forum-selection clauses contained in software end-user-license-agreements. *XPEL Techs. Corp. v. Md. Performance Works, Ltd.*, 2006 U.S. Dist. LEXIS 47158, at *17 (W.D. Tex. May 19, 2006) ("By accepting the EULA and its Texas forum selection clause, Maryland Performance consented to this Court's exercise of personal jurisdiction for suits arising out of the EULA.");  *Mendoza v. Microsoft, Inc.*, 2014 U.S. Dist. LEXIS 27910, 15 (W.D. Tex. Mar. 5, 2014) ("According to federal law, such clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.  . . . The party resisting the forum-selection clause's enforcement on these grounds bears a heavy burden of proof.") (quotations and citations omitted).

2.     The Court should not Consider "Private Interest Factors" in Deciding Whether to Transfer Venue

41. Because Tyler agreed to the forum-selection clause in the EULA, in evaluating this Motion, the Court should not consider any so-called private-interest factors that Tyler may put

forth in its opposition. *Atlantic Marine Construction Co.,* 134 S. Ct. at 582 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.")

   3. <u>This is not an "Exceptional Case" and the Forum-Selection Clause Governs</u>

 42. Here, the EULA governing the use of the Copyrighted Software was presented to and accepted by the user—Tyler's employee—and Tyler thereby entered into that contract with VBC.  That EULA contains a valid forum-selection clause designating the Central District of California as the proper forum for any dispute among the parties. There is nothing to suggest that this is an "exceptional case."  Therefore, under the Supreme Court's ruling in *Atlantic Marine*, The Court should transfer this matter to the Central District of California as designated by the forum selection clause.

## IV. <u>CONCLUSION</u>

 43. For all these reasons, the Court should dispose of this Action either by declining to exercise its discretionary jurisdiction under 28 U.S.C. § 2201 and dismissing the Action, or by transferring the Action to the Central District of California under 28. U.S.C. §1404(a).

     Respectfully submitted,

     LEWIS, BRISBOIS, BISGAARD & SMITH, LLP

     _/s/ Russell W. Heald_____
     RUSSELL W. HEALD TBA#09326700
     550 Fannin, Suite 800
     Beaumont, Texas 77701
     409/838-6767 (T) 409/838-6950 (F)
     Russell.Heald@lewisbrisbois.com

     **ATTORNEYS FOR DEFENDANT,**
     **VBCONVERSIONS LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record in this case and all other parties entitled to same in accordance with the Federal Rules of Civil Procedure and/or by CM/ECF filing system on this 13 day of April, 2014.

 */s/ Russell W. Heald*
RUSSELL W. HEALD