# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| TYLER TECHNOLOGIES, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>VBCONVERSIONS LLC,<br><br>  Defendant. | Civil Action No. 4:14-cv-00150 |

## PLAINTIFF TYLER TECHNOLOGIES, INC.'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER

**PLAINTIFF TYLER TECHNOLOGIES, INC.'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS OR TRANSFER**

## I. INTRODUCTION.

Contrary to the assertions in its Motion to Dismiss and/or to Transfer, Defendant VBConversions LLC ("VBC") is not the "true plaintiff" in this case.  Since at least 2006, VBC has engaged in a pattern of demanding large sums of money from companies that allegedly used a $199 software program without a proper license.  VBC's prior demands, and its current Motion, make it clear that it wants Plaintiff Tyler Technologies, Inc. ("Tyler") to pay in excess of $135,000 for the conduct and actions of an individual operating a *gmail account*, allegedly to convert code that has never existed in any database or environment that Tyler owns, operates or maintains, despite an extensive Tyler audit uncovering no evidence that the gmail account owner converted the code on a Tyler-owned computer or over a Tyler-owned network.

Because Tyler has no connection to the allegedly infringing conduct of the gmail account owner, Tyler exercised its rights, under the Declaratory Judgment Act, to seek adjudication in the most convenient forum for all of the parties in the litigation.  For the foregoing and following reasons, Tyler respectfully requests that the Court deny VBC's Motion to Dismiss and/or to Transfer.

## II. FACTS & BACKGROUND.

### A. VBC Has A Long History of Monetizing its Software Using A Cost of Defense Litigation Strategy.

Defendant VBC claims that it owns all copyrights relating to a computer software program entitled VB.Net to C# Converter ("Software").  According to VBC, the Software is a development tool used to convert Visual Basic computer programming language (sometimes referred to as "VB.net") to C# programming language.  The Software is distributed on the Internet at VBC's website, www.vbconversions.com, under a "trialware" version that is

allegedly capability-limited and can be used for free for up to fifteen days. The full version of the Software is available for purchase on VBC's website for $199.

Since at least 2006, VBC and its predecessor in interest, David A. Crook, have demanded large sums of money from profitable companies engaged in the software business. Upon information and belief, VBC has initiated no fewer than 30 lawsuits alleging copyright infringement based on the target's supposed "full version" use of the Software, with similarly large demands. The overwhelming majority of these lawsuits are dismissed with prejudice within the first few months of litigation – often before the opposing party answers or otherwise appears.[1]

### B. VBC Uses Spyware to Manufacture A Connection Between Tyler And The VBC Litigation Strategy.

Plaintiff Tyler is the largest software company in the nation focused solely on providing integrated software and technology services to the public sector. Tyler's corporate finance, accounting, tax and marketing departments, as well as its General Counsel's office, are located in the company's Plano, Texas office. Ex. C, Rensenbrink Decl., ¶ 3. Tyler's Chief Information Officer also works in the Plano office. Ex. B, Bieri Decl., ¶ 2.

On February 6, 2014, VBC sent a letter ("Demand Letter") to H. Lynn Moore, Jr., Tyler's Executive Vice President and General Counsel, alleging that "Tyler, by and through its employee(s), has willfully infringed VBC's rights in the [Software]." *See* Ex. A-1, Demand Letter. The Demand Letter also claimed that Tyler violated the DMCA when a Tyler employee

---

[1] *See, e.g.*, *VBConversions, LLC v. Alere, Inc., et al.*, Civ. A. No. 2:13-cv-08115-JFW-AJW (C.D. Cal.) (*filed* 11/10/2013; *dismissed with prejudice* 12/02/2013); *VBConversions, LLC v. Thorosoft, LLC, et al.*, Civ. A. No. 2:13-cv-07577-PA-VBK (C.D. Cal.) (*filed* 10/14/2013; *dismissed without prejudice* 01/10/2014); *VBConversions, LLC v. SalesFusion, Inc., et al.*, Civ. A. No. 2:13-cv-05868-DMG-MAN (C.D. Cal.) (*filed* 08/12/2013; *dismissed with prejudice* 10/16/2013); *VBConversions, LLC v. The Rand Group*, Civ. A. No. 2:11-cv-06321-JFW-JCG (C.D. Cal.) (*filed* 08/01/2011; *dismissed with prejudice* 12/05/2011);

used a "stolen or reverse engineered" key to unlock a "capability-limited copy" of the Software. *Id.*

The files allegedly converted by the Software, identified in Exhibit C to the Demand Letter, relate to a Tyler product known as the Tyler Education Management System ("<u>TEMS</u>").[2] Ex. A-1, Demand Letter; Dkt. 1, Cmplt., ¶ 26. Today, the largest concentration of the TEMS team, including TEMS developers and support staff, work at Tyler's offices in Longview, Texas, which is located in the Eastern District of Texas. Ex. A, McIntosh Decl., ¶ 5. Additionally, the majority of the computer servers relating to TEMS are located in Longview, Texas, and managed in Plano, Texas, both of which are located in the Eastern District of Texas.[3] Ex. B, Bieri Decl., ¶ 3.

VBC alleges that the TEMS code was converted by "Syed Abu Fahad" and/or "Syed Muhammad Fahad."[4] Ex. A-1, Demand Letter. According to VBC, in November 2006, an individual named "syed abu fahad" used a trialware version of the Software. *Id.* Additionally, VBC contends that in November 2010, the same "syed abu fahad"[5] unsuccessfully tried to "unlock" a trialware version of the software using a key made up of 25 "1's" and 25 "a's." *Id.*

According to VBC, nearly one year later, on October 17, 2011, an individual installed and registered a trialware version of the Software using the e-mail address <u>uknowsana@gmail.com</u>. *Id.* At that time, "<u>uknowsana@gmail.com</u>" was allegedly presented

---

[2]  TEMs is currently referred to as Tyler SIS.

[3]  Tyler's back-up servers are located in Maine.

[4]  It appears VBC does not appreciate that "Syed Abu Fahad" may be a separate individual from "Syed Muhammad Fahad." *See, e,g.*, Ex. A-1, Demand Letter, p. 3 (referring to "Syed Muhammad Fahad" as the "same user" as "a user named 'syed abu fahad'"). "Syed" is an honorific title used in Pakistan and other Muslim countries to identify a male accepted as a descendant of the Islamic prophet Muhammad. Like many titles, "Syed" is commonly appended to given names to comport with Western customs.

[5]  It is equally unclear how VBC determined that these two references to "syed abu fahad's" are actually references to the same individual.

**PLAINTIFF TYLER TECHNOLOGIES, INC.'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS OR TRANSFER – PAGE 3**

with, and accepted, VBC's End User License Agreement ("EULA"), which purportedly advises the user that (i) a license fee must be paid to use a version of the Software that is not capability limited, and (ii) illicit keys cannot be used to unlock those capability-limited copies. *Id.* In addition, VBC claims that the EULA contains a forum-selection clause, establishing jurisdiction for claims under the EULA in California. Motion, p. 13–15.

The computer that "uknowsana@gmail.com" allegedly used to install and launch the Software used the IP address 70.91,247,49 and 67.176.156.90 (external) and 192.168.11.9 and 10.197.55.24 (internal). Ex. A-1, Demand Letter. Then, says VBC, the "uknowsana@gmail.com" account holder used a valid key that had been stolen or reverse engineered to unlock the full version of the Software.[6] *Id.* After unlocking the Software, "uknowsana@gmail.com" allegedly converted hundreds of thousands of lines of computer code from Visual Basic code to C# code.

At the time the Software was installed, the only identification associated with the installer was the "uknowsana@gmail.com" email address. Using spyware incorporated into the Software[7], VBC was able to determine that "uknowsana@gmail.com" also used the following e-mail addresses on his/her computer: "fhadsomnia7@live.com," "fatima_shamim246@hotmail.com," "smfahad047@hotmail.com," and "Syed.Fahad6@tylertech.com."

More than two years after the alleged infringement, and just two months after its most recent copyright action had been dismissed with prejudice, *see supra* Note 1, VBC sent the

---

[6] VBC did not identify the true owner of the "valid key." *See* Ex. A-1, Demand Letter. Accordingly, Tyler cannot determine if VBC's allegations that "uknowsana@gmail.com" lacked authorization to use the key are correct.

[7] VBC alleges that "uknowsana@gmail.com" agreed to the installation and use of this spyware when he accepted the EULA.

**PLAINTIFF TYLER TECHNOLOGIES, INC.'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS OR TRANSFER – PAGE 4**

Demand Letter to Mr. Moore, Executive Vice President and General Counsel for the company associated with "tylertech.com," offering to "resolve this matter" for $135,000.  Ex. A-1, Demand Letter, p. 5.  Tyler's response to that "offer" is addressed below.

### C. A State-of-The-Art Audit Uncovers No Evidence to Substantiate VBC's Demand Letter.

Tyler previously employed one individual named "Syed Abu Fahad" and another individual named "Syed Muhammad Fahad."  Ex. C, Rensenbrink Decl., ¶ 8.  It is not known if either of these individuals is the same "Syed Abu Fahad" or "Syed Muhammad Fahad" referenced in VBC's demand letter.  Nor is it known if "Syed Abu Fahad," "Syed Muhammad Fahad," and "uknowsana@gmail.com" are one in the same person, two separate people, or three separate people.[8]

A man named Syed Abu Fahad became a Tyler employee in January 2006, and worked in development on the TEMS product.  *Id.*, ¶¶ 9, 11.  Effective January 1, 2010, he was transferred to a different division and different product line.  *Id.*, ¶ 12.  He has not worked on TEMS development since that time.  *Id.*, ¶¶ 12–14.  In May 2014, Syed Abu Fahad was part of a reduction in force that aligned with Tyler's termination of its offshore resources.  *Id.*, ¶ 14.

A man named Syed Muhammad Fahad began working for Tyler in June 2007.  *Id.*, ¶ 15.  He was hired as a developer for TEMS.  *Id.*  He worked exclusively on the design and testing of a TEMS windows utility, which is written in C#, not VB.net.  *Id.*, ¶ 15; Ex. A, McIntosh Decl., ¶ 22.  He resigned from Tyler, effective October 19, 2012, to accept a job with a higher salary.  Ex. C, Rensenbrink Decl., ¶ 17.

---

[8]  "Sana" is often used as a female name in Muslim countries, and "Fatima," which is used in at least one of the other e-mail addresses identified by VBC's spyware, is also used as a female name.

After it received VBC's Demand Letter, Tyler conducted an extensive audit of its entire computer network infrastructure.  Ex. B, Bieri Decl., ¶ 6.  Using LANDesk software, which Gartner, Inc. (an Information Technology research and advisory firm) categorizes as being in the top quadrant for Information Technology asset management, Tyler searched approximately 3,000 computers and 1,200 servers.  *Id.*  **Not a single instance of the Software was uncovered, trialware or otherwise.**  *Id.*, ¶ 7.

Additionally, Tyler searched for and could not locate any computer labeled "CHI-SFAHAD," nor does Tyler have any record of ever owning such a computer.  *Id.*, ¶ 8.  Tyler also researched the four IP addresses that "uknowsana@gmail.com" allegedly used when he downloaded and/or accessed the Software.  *Id.*, ¶ 9.  None of those four IP addresses belong to Tyler, nor does Tyler have any record of ever owning such IP addresses.  *Id.*

The "uknowsana@gmail.com" address is not a Tyler e-mail address, and Tyler employees are not permitted to conduct Tyler business using a personal e-mail account.  *Id.*, ¶ 10–11.  There is no Tyler record of the e-mail address "Syed.Fahad6@tylertech.com," and there is no record that such an e-mail address ever existed.  *Id.*, ¶ 12.  In short, there is absolutely no evidence that any of the activities alleged to have been performed by "uknowsana@gmail.com," "Syed Abu Fahad," and/or "Syed Muhammad Fahad" occurred on or using Tyler hardware, software, or infrastructure.  *Id.*, ¶¶ 6–13.

Tyler's investigation of VBC's allegations, however, did not stop there.  TEMS includes a web application and windows utilities.  The majority of the web application is written in VB.net code, and the windows utilities are written in C# code.  Ex. A, McIntosh Decl., ¶ 4.  Since at least 2011, Tyler has:

- retained every built and released iteration of its TEMS source code and logged every change to its code using industry standard tools, *id.*, ¶ 8;

- "tagged" every source code change in JIRA, a bug tracking system and project management software, providing an explanation for any change that is made to the built and released TEMS source code, *id.*, ¶ 9; and

- maintained a Sharepoint log of every project impacting its source code, and since at least 2011, changes to source code made by any Tyler developer have been reviewed by a Quality Assurance analyst. *Id.*, ¶ 10.

***There is no record, in any source code tracking tool, log, or other Quality Assurance process, of the VB.net files that VBC identified in its Demand Letter as having been converted to C#.*** *Id.*, ¶ 12. Because the allegedly converted C# code never entered Tyler's source code stream, it never entered Tyler's builds, Quality Assurance servers, or customer servers. *Id.*, ¶ 13. In other words, the VB.net files that "uknowsana@gmail.com" allegedly converted to C# using the software ***have never existed in any database Tyler maintains.*** *Id.*, ¶ 12–14.

Furthermore, Tyler had no reason to direct any of its employees to convert VB.net files into C# files. In order to convert the hundreds of thousands of VB.net code identified in the Demand Letter into C# for or on behalf of Tyler, "uknowsana@gmail.com" would have had to (i) delete 85–90% of the VB.net code base of TEMS, and (ii) replace it with the new C# code. *Id.*, ¶ 23–27.

If the alleged overhaul of the TEMS source code for or on behalf of Tyler had occurred, it would have been a singularly disruptive event for the TEMS web application developers, whose prior work had been entirely in VB.net. *Id.*, ¶ 27. There would have been extensive email communication, a significant regression in existing features, and multiple red flags in Quality

Assurance. *Id.*, ¶ 27. There is no evidence of any such reaction. *Id.*, ¶ 27. Moreover, the converted code would have offered Tyler no business benefit. *Id.*, ¶ 16.

Finally, the Tyler employees named Syed Abu Fahad and Syed Muhammad Fahad each signed Tyler's then-current End-User Technology Policy. Ex. C, Rensenbrink Decl., ¶¶ 10, 16. Tyler's End-User Technology Policy has consistently instructed employees to respect all copyrighted, personal or proprietary information belonging to others. *Id.*, ¶¶ 5–7. Using Tyler hardware or networks to gain unauthorized access to any system or data may result in immediate dismissal. *Id.* Employees are not allowed to add software to their computers without first checking with IT staff, and are advised that Tyler's policy is to "adhere strictly to the letter and spirit of copyright laws and regulations." *Id.*

        **D.    Following the Results of Its Investigation, and Based Upon VBC's Prior Litigation History, Tyler Exercised Its Right to Choose a Declaratory Judgment Action Over a Protracted "Negotiation" With VBC.**

When Tyler discovered that none of VBC's allegations relating to "uknowsana@gmail.com" pertained at all to Tyler's products or systems, Tyler exercised its right under the Declaratory Judgment Act to file this lawsuit seeking a declaration that Tyler is not directly, contributorily, or vicariously liable for any of "uknowsana@gmail.com's" alleged infringement. Tyler did not want to participate in extended "settlement" discussions with an entity seeking to use the lingering threat of litigation as a way to coerce payment. Tyler therefore brought its lawsuit in the jurisdiction where, for example, TEMS servers and developers are located, where Tyler's Chief Information Officer (who conducted the audit summarized above) works, and where VBC sent its Demand Letter.

VBC subsequently sued Tyler in the Central District of California, the jurisdiction in which VBC's main legal team practices ("California Action"). *See, e.g.*, Ex. A-1, Demand

**PLAINTIFF TYLER TECHNOLOGIES, INC.'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS OR TRANSFER – PAGE 8**

Letter; Motion Ex. D, California Cmplt. In the nearly three months that have passed since that filing, VBC has still not even served Tyler.

## III. ARGUMENT & AUTHORITIES.

### A. The Court Should Exercise Its Discretion to Decide Tyler's Declaratory Judgment Action.

"The Fifth Circuit has outlined three steps a district court must follow to determine whether to decide or dismiss a declaratory judgment case: first, the district court must determine whether the declaratory judgment action presents a justiciable actual controversy; second, the district court must determine whether it has the authority to grant relief; and third, the court must determine whether to exercise its discretion to decide or dismiss the action." *Poly-America, L.P. v. Stego Industries, L.L.C.*, 694 F. Supp. 2d 600, 605 (N.D. Tex. 2010) (denying motion to dismiss declaratory judgment complaint regarding trademark infringement). "[T]he *Trejo* factors point toward dismissal only in a 'narrow category of federal declaratory judgment lawsuits filed for reasons found improper and abusive[.]" *Id.* at 610.

#### 1. *An actual, justiciable controversy exists, and this Court has the authority to grant relief.*

VBC does not dispute that an actual, justiciable controversy exists, nor does VBC contest this Court's jurisdiction or authority to grant relief. *See* Motion at pp. 7–13. At some undefined future time, VBC threatened to sue Tyler unless Tyler agreed to settle its so-called infringement at a discount rate of $135,000, and instructed Tyler to issue a litigation hold. Ex. A-1, Demand Letter. Accordingly, "the specter of litigation undoubtedly hung over the . . . dealings between the parties." *Poly-America, L.P.*, 694 F. Supp. 2d at 607 (quoting "*IMS Health, Inc. v. Vality Technology, Inc.*, 59 F. Supp. 2d 454, 461 (E.D. Penn. 1999)).

### 2. The unique facts and circumstances of this litigation warrant the exercise of the Court's discretion and denial of VBC's Motion.

Contrary to VBC's assertions, all of the Fifth Circuit's *Trejo* factors are either a) inapplicable,[9] b) neutral,[10] or c) support the exercise of the Court's discretion to retain the litigation. Accordingly, the Court should deny VBC's Motion to Dismiss.

*First*, VBC is not the "true plaintiff" in this litigation. Unlike most declaratory judgment actions involving straightforward allegations of trademark and copyright infringement,[11] VBC's Demand Letter and Motion make it clear that it intends to pursue and seek an excessive, cost-of-defense settlement from Tyler for the conduct and actions of an individual operating a ***gmail account***. Tyler does not own, and has no evidence of ever owning the accused gmail account. Ex. B, Bieri Decl., ¶¶ 10–11. Tyler also does not own, and has no evidence of ever owning the computer that "uknowsana@gmail.com" allegedly used when he downloaded the Software and/or accessed it illegally. *Id.*, ¶ 8. Nor does Tyler own, or have any record of ever owning, the ISP connections that "uknowsana@gmail.com" allegedly used. *Id.*, ¶ 9. Finally, the converted code that is the heart of VBC's allegation ***never existed in any database or environment that Tyler owns, operates, or maintains.*** Ex. A, McIntosh Decl., ¶¶ 8–13. Under *Trejo*, the unique facts of this case do not support dismissal of Tyler's declaratory judgment lawsuit. *See Poly-America, L.P.*, 694 F. Supp. 2d at 610.

*Second*, this case does not involve two "pending" actions relating to the same dispute, filed in two different venues. Although VBC sued Tyler in the Central District of California on March 19, 2014, and requested a summons, in the last seventy-nine (79) days, it has made no

---

[9] Tyler agrees with VBC that the first (whether there is a pending state action) and seventh (whether the federal court is being called on to construe a state judicial decree) factors do not apply in this case.

[10] Tyler agrees with VBC that the sixth *Trejo* factor (judicial economy) is neutral.

[11] *See, e.g., Mill Creek Press, Inc. v. Thomas Kinkade Co.*, 2004 U.S. Dist. LEXIS 31100, at *29–30 (cited by VBC on Motion, p. 8).

attempt whatsoever to serve Tyler. Based on VBC's actions to date, it is apparent that it filed the California Action only for purpose of creating some leverage for this Motion. Moreover, "[f]ederal declaratory judgment suits are routinely filed in anticipation of other litigation." *See Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 391 (5th Cir. 2003). The fact that Tyler filed a declaratory judgment action instead of relenting to VBC's demands for an excessive payment does not transform Tyler's actions into the nefarious "anticipatory" filing VBC contends. Rather, **VBC** did not file the ***California*** Action in good faith, the second *Trejo* factor either favors the Court's retention of this lawsuit, or is neutral.[12]

***Third***, and related to the above, applicable Fifth Circuit case law makes it clear that Tyler did not "forum shop." In *Sherwin-Williams Co.*, the Fifth Circuit specifically addressed the concept of "forum shopping" within the context of the *Trejo* factors, stating: "The mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d at 397–400.

The *Sherwin-Williams* Court went on to distinguish *Mission Insurance Co. v. Puritan Fashions Corp.*, which VBC cites in its Motion. *Id.* As the *Sherwin-Williams* Court held, because the federal forum did not change the law that would apply against the declaratory judgment defendants, the record did not support a finding that the declaratory judgment plaintiff engaged in impermissible forum shopping. *Id.* VBC failed to set forth any evidence in its Motion that Tyler impermissibly forum shopped, especially in light of the convenience of the Eastern District of Texas as a forum, for all parties, as discussed below. The third *Trejo* factor either supports the retention of the litigation or is neutral.

---

[12] Furthermore, as VBC readily acknowledges, the fact that a declaratory judgment plaintiff filed an anticipation declaratory judgment action is not, in itself, dispositive of the inquiry. *See* Motion, pp. 9–10 (citing *Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228 (S.D. Ala. 2006).

**PLAINTIFF TYLER TECHNOLOGIES, INC.'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS OR TRANSFER – PAGE 11**

*Fourth*, the Eastern District of Texas is the most convenient forum for *all* of the parties and witnesses, and there is no inequity in the lawsuit proceeding in this jurisdiction.

The largest concentration of the TEMS team, including TEMS developers and support staff, currently works at Tyler's offices in Longview, Texas, and the majority of the TEMS servers are also located in Longview, Texas and managed out of Plano, Texas.  Ex. A, McIntosh Decl., ¶ 5; Ex. B, Bieri Decl., ¶ 3; *see, e.g., In re Genentech, Inc.*, 566 F.3d 1338, 1343–45 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.").  Furthermore, Tyler's Chief Information Officer, Mr. Bieri, works at Tyler's office in Plano, Texas, and Tyler's marketing, finance, accounting, tax, and legal departments are also all headquartered in Plano, Texas.  Ex. B, Bieri Decl., ¶ 2; Ex. C, Rensenbrink Decl., ¶ 3; *see also In re Genentech, Inc.*, 566 F.3d at 1343–45.

To the extent there is another jurisdiction with evidentiary connections to the alleged infringement, it is Maine, where the TEMS backup servers are located and the Vice President of Development responsible for the TEMS product, Judson McIntosh, is located.  Ex. A, McIntosh Decl., ¶ 2; Ex. B, Bieri Decl., ¶ 3.  On the other hand, there is no connection – even for VBC – to California as a forum, except for the fact that VBC's main legal team practices in Los Angeles.  For example, plaintiff's managing member and primary witness, Mr. Crook, lives in Missouri.  Crook Decl., preamble.  The allegedly infringing activity of "uknowsana@gmail.com" apparently took place in or from Chicago, Illinois.  Ex. A-1, Demand Letter, p. 3.  Moreover, Tyler does not maintain an office in California, and VBC makes no allegation that the supposed infringement, or any activity associated with it, occurred in California.  *See* Ex. C, Rensenbrink Decl., ¶ 4.

VBC's desire to move this litigation to California is based on its playbook of creating litigation stress so as to extract a nuisance settlement. Texas is the most appropriate forum, both because of its direct connections to the evidence and because of its relative proximity to Illinois, Missouri and Maine, as compared to California. *See TS Tech U.S. Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (applying Fifth Circuit standard and holding that trial court erred by failing to "considerably weigh" the additional nine hundred (900) miles that witnesses would need to travel to attend trial in one jurisdiction over another). Accordingly, the final two *Trejo* factors (four and five) favor denying VBC's Motion.

Because all of the disputed *Trejo* factors are either neutral or favor maintaining jurisdiction in Texas, the Court should deny VBC's Motion to Dismiss and exercise its discretion to decide Tyler's declaratory judgment action.

    **B.    The forum selection clause executed by "uknowsana@gmail.com" does not apply to Tyler.**

It is axiomatic that "he who seeks transfer [pursuant to 28 U.S.C. § 1404] must show good cause." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). Because VBC cannot "clearly demonstrate that a transfer is for the convenience of parties and witnesses, [and] in the interest of justice," it attempts to avoid the burden of proof under Section 1404(a) by improperly relying upon the EULA's forum selection clause. *Id.* (internal citations omitted); *see* Motion, pp. 13–15. It is undisputed however, that Tyler ***never signed, executed, or agreed to the EULA.*** Ex. A, McIntosh Decl., ¶ 31–32; *see also* Crook Decl. ¶¶ 10–11 (testifying only as to "uknowsana@gmail.com's" execution of the EULA).[13] In addition, the supposed

---

[13] Much of VBC's so-called "evidence" is plainly inadmissible. Mr. Crook's testimony that a "user employed by Tyler" accepted the EULA lacks foundation, is based on hearsay, and is otherwise not competent evidence. Tyler's Motion to Strike Mr. Crook's Declaration is submitted contemporaneously with this Response.

**PLAINTIFF TYLER TECHNOLOGIES, INC.'S RESPONSE TO**
<u>**DEFENDANT'S MOTION TO DISMISS OR TRANSFER – PAGE 13**</u>

EULA that VBC has submitted as evidence to the Court bears no indication that it was signed or otherwise accepted by anyone, much less "uknowsana@gmail.com." Motion Ex. C.

At best for VBC, the EULA's forum selection provision could only be applied to Tyler under a recognized contract or agency principal. *See Delaney v. Gulf Stream Coach, Inc.*, Civ. A. No. H-08-2018, 2008 WL 5114955, at *2–3 (S.D. Tex. Dec. 3, 2008) (refusing to apply agreement's forum selection provision after finding that defendant failed to present sufficient evidence that either plaintiff signed the agreement).[14] VBC's motion fails, however, to provide any evidence that Tyler employed or maintained an agency relationship with "uknowsana@gmail.com." VBC's *assumption* that "uknowsana@gmail.com's" name is "Syed M. Fahad" is just that – an assumption based on hearsay evidence obtained through spyware. Even if "uknowsana@gmail.com" and "Syed M. Fahad" are the same person, there is no evidence that the Syed M. Fahad VBC identified and Tyler's employee, Syed M. Fahad, are the *same person*.

Finally, even assuming that the Syed M. Fahad that supposedly signed the EULA *is* the same Syed M. Fahad who worked for Tyler, he did not execute the EULA at the instruction, or for the benefit of, Tyler. Ex. A, McIntosh Decl., ¶ 28–32. Nor did he "sign" the agreement using any of Tyler's computer hardware. Ex. B, Bieri Decl., ¶ 6–13. Tyler was not even aware that the Software existed, much less that it was associated with a EULA containing a forum selection clause, until VBC threatened to sue Tyler. Ex. A, McIntosh Decl., ¶ 17–25; 28–32. There is absolutely no legal precedent for holding an employer responsible for the agreements that its employees may have executed on their own time, using their personal e-mail accounts, on

---

[14] *See also Med-IM Development, Inc. v. General Elec. Capital Corp.*, Civ. A. No. H-07-1618, 2008 WL 901489, at *4 (S.D. Tex. March 31, 2008) (refusing to apply mandatory arbitration provision against non-signatory); *Quicksilver Resources, Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 953 (S.D. Tex. 2011) (refusing to apply choice of law provision to non-signatories).

**PLAINTIFF TYLER TECHNOLOGIES, INC.'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS OR TRANSFER – PAGE 14**

their own computers, over a personal Internet connection.[15]  Ex. A, McIntosh Decl., ¶ 28–32; Ex. B, Bieri Decl., ¶ 6–13.

VBC cannot shield itself from the high burden of having to "clearly demonstrate that a transfer is for the convenience of parties and witnesses, [and] in the interest of justice" by using the EULA's forum selection clause.  *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.  Fifth Circuit precedent requires VBC to prove that (1) jurisdiction is available in the transferee district, and (2) the public and private interest factors support transfer.  *Id.*  VBC failed to even perform this analysis.  *See* Motion, pp. 13–15.  Accordingly, the Court must deny the Motion to Transfer because the EULA and forum selection clause do not apply.

## IV.   CONCLUSION.

For the foregoing and following reasons, Plaintiff Tyler Technologies, Inc. respectfully requests that the Court deny Defendant VBConversions LLC's Motion to Dismiss and/or Transfer and exercise its discretion to decide Tyler's declaratory judgment action in the Eastern District of Texas.

---

[15]   Neither of the cases VBC cites supports the application of the EULA's forum selection clause to Tyler. Motion, p. 14. In both of those cases, the non-moving party *admitted* that it signed or executed the EULA.

Dated: June 6, 2014            Respectfully submitted,

         /s/ *John F. Sullivan*
         John F. Sullivan, *Lead Attorney*
           Texas State Bar No. 19485010
           john.sullivan@klgates.com
        **K&L Gates LLP**
         1000 Main St.
         Suite 2550
         Houston, Texas 77002
         713.815.7330
         713.815.7301 *Facsimile*

         Craig W. Budner
           Texas State Bar No.03313730
           craig.budner@klgates.com
         Jennifer Klein Ayers
           Texas State Bar No. 24069322
           jennifer.ayers@klgates.com
        **K&L Gates LLP**
         1717 Main St.
         Suite 2800
         Dallas, TX  75201
         214.939.5500
         214.939.5849 *Facsimile*

         **ATTORNEYS FOR PLAINTIFF**
         **TYLER TECHNOLOGIES, INC.**

### CERTIFICATE OF SERVICE

      Pursuant to the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of Texas, I certify that all counsel of record who have appeared in this action have received an electronic copy of this Motion via the Court's ECF/CM system on June 6, 2014.

         */s/ John F. Sullivan*
         John F. Sullivan