IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **TYLER TECHNOLOGIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| VS. | § | |
| | § | **CIVIL ACTION NO. 4:14-cv-00150** |
| **VBCONVERSIONS LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**VBCONVERSIONS LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS (RATHER THAN EXERCISE DISCRETIONARY JURISDICTION UNDER 28 U.S.C. § 2201) OR, IN THE ALTERNATIVE, TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(A)**

I.      **INTRODUCTION**

Where to begin?  The Opposition of Declaratory Plaintiff Tyler Technologies, Inc. ("Tyler") to the Motion to Dismiss or Transfer filed by Defendant VBC Conversions, LLC ("VBC") is so replete with self-serving, misleading, and entirely-irrelevant statements of fact and law that it is difficult to know which to address first.

One thing is clear, however: Tyler was dead set on distracting the Court from Tyler's duplicitous behavior during the period leading up to the filing of its Complaint.  However, the facts of that deception are all before the Court: 1) After receiving a detailed demand letter from VBC, Tyler repeatedly requested extensions of time to complete its investigation of VBC's allegations, asking that VBC, the true plaintiff, delay filing of its complaint against Tyler in VBC's chosen forum; 2) VBC granted the requests but made clear that, if a response was not received by a specific date, VBC would move forward with filing its complaint; and 3) on the very day Tyler promised to respond to the allegations, it, instead, filed its anticipatory Declaratory Judgment Complaint in this Court.  While Tyler attempts to distract the Court, it has never actually denied those allegations.

Tyler has not explained its scurrilous behavior.  Nor has it provided a single case refuting the well-accepted law in this circuit that declaratory-judgment complaints filed under such circumstances must be dismissed because, to do otherwise, "would penalize [the injured party] for its attempt to make a good faith effort to resolve this dispute out of court." *Mill Creek Press, Inc v. Thomas Kinkade Co.*, 2004 U.S. Dist. LEXIS 31100 at *29-30 (citing *Merle Norman Cosmetics v. Martin*, 705 F. Supp. 296, 299 (E.D. La. 1988)).

II.     **TYLER'S IRRELEVANT AND MISLEADING FACUTAL ASSERTIONS**

A.      **VBC is Not a Troll; It's Principal is a Small-Businessman with his Back Against the Wall, Defending Himself Against Rampant Piracy**

Without using the term, Tyler clearly attempts to paint VBC as a sort of copyright "troll," going on about how many suits VBC has filed and the fact that the cases are generally dismissed early, after settlement is achieved.  (Opposition at 1-2.)   This portrayal of VBC is both entirely irrelevant and entirely false.  Even if VBC were a "troll," Tyler cites no provision of the copyright

act and no case law (because there is none) supporting the idea that this would in any way impact VBC's rights or treatment under the law.

Equally importantly, it is a deliberate and self-serving misrepresentation. VBC has offered the conversion software it's principal, David Crook, developed to the public since at least 2004. (Declaration of David A. Crook ("Crook Decl."), ¶ 3.) Over the years, Mr. Crook has written, and VBC has published, three major releases and dozens of incremental upgrades, all of which have been provided free to those who purchased a license for any version of the software. (*Id.*) The software has received a rating from users of four stars out of five on download.com (one of the largest sites for distribution of shareware software) and has been downloaded over 20,000 times from that website alone. (*Id.*, ¶ 4, Exh. "A-1".) In terms of downloads, the software ranks 33rd out of nearly 500 programs in the "IDE Software" category on that site, which covers software used by developers in their own work. (*Id.*) Microsoft's own Visual Studio 2010 Professional is, not surprisingly, first-ranked by downloads in that category, but it has netted a rating on the site of only three stars out of five based on user reviews. (*Id.*, ¶ 5, Exh. "A-2".)

David Crook is a dedicated software developer committed to providing the best tools he can to the programming community. Unfortunately, because of the quality and popularity of his software, it has become a major target of pirates, with the result that, at this time, over 75% of the use of VBC's software since 2006 has been illicit use by those who have pirated the software rather than pay VBC's very reasonable license fee. (*Id.*, ¶ 6.)

Over the years, VBC has made use of various technological means to staunch the flow. Unfortunately, it will never be able to block all of the hackers out there, and must always balance the additional security provided by instituting new technological measures with the inconvenience (and disincentive) they may place on prospective legitimate buyers/users. As such, hackers have sometimes released pirated versions of new releases of the software online in as little as a few hours after VBC releases one. (*Id.*, ¶ 7.) VBC, therefore, has had no choice but to take an aggressive legal stance against those pirates it can identify.

The fact that VBC has been forced by recalcitrant defendants to file numerous actions, only to have those defendants agree to settle when they see that VBC is serious about defending its software and that they have no defense for their illicit acts, is a reflection on them, not on VBC.

**B.      Tyler's Attempt to Argue the Merits of the Case are Irrelevant and Misleading**

In further attempt to distract the Court, Tyler spends nearly four pages of its Opposition and ten pages of Declarations arguing the merits of VBC's case against it.  (Opposition at 5-8.) This is a complete *non sequitor*.  If the Court had a 12(b)(6) motion before it, this material might be relevant. But, in the present context, the merits of VBC's affirmative case against Tyler have **absolutely no relevance** and Tyler cites no case law to support the notion that it might.  The only question before the Court at this time is whether Tyler was justified in lying to VBC about its intentions in requesting extensions and then racing to file its anticipatory suit in this Court before VBC, the true plaintiff, could exercise its rightful choice of forum.[1]  The answer to that question is, obviously, "no."

Once more, however, Tyler does not merely argue irrelevantly, it argues misleadingly.  Even if we were to presume that Tyler's untested, self-serving statements were truthful, all the facts and assumptions left unstated make them entirely unedifying.  For example, Tyler alleges that it "searched 3,0000 computers and 1,200 servers" and did not locate a copy of the "computer software program entitled VB.Net to C# Converter."  (Opposition at 6; Declaration of Matthew Bieri, ¶ 6.) This sounds pretty impressive and convincing.  Unfortunately, that statement is meaningless, because, though that is the commercial name of the software, no executable file with that name is created when the software is installed and none will appear when disk directories are searched. (Crook Decl., ¶ 8.)  Even if that were not the case, Tyler does not tell the Court how many computers it has taken out of use or reformatted in the two years since the infringement, or what records are kept of files deleted from its computers, and whether those were searched. It is similarly vague about the historical completeness of the other records it claims to have searched. It also says

---

[1] In arguing the *Trejo* factors, Tyler argues that this forum is no more convenient for VBC than the Central District of California because Mr. Crook resides in Missouri.  However, VBC, is free to make the determination that, as a one-person operation, it is more convenient (and less costly) for it to litigate in the district where its attorneys are located.

nothing about the extent to which its programmers make use of their own computers to program on behalf of Tyler both on and off its network.

Finally, even if Tyler's assertion that the code that its pirate employee converted using the Copyrighted Software never entered Tyler's codebase is true, that goes only to the matter of profits (and actual damages).  It does not speak, in any way, as to whether the alleged infringement took place.

### C. Tyler Grossly Misrepresents its Litigation Behavior

Tyler's most egregious misrepresentation is as to it behavior in this litigation.  Tyler claims that it only filed its action for Declaratory Judgment in this Court because it "did not want to participate in extended 'settlement' discussions … [under a] lingering threat of litigation." (Opposition at 8.)  This is, frankly, an absurd attempt to whitewash Tyler's behavior.

As is abundantly clear from the exhibits attached to Tyler's own complaint, VBC made clear from it's very first contact with Tyler that VBC was **not** interested in a protracted negotiations, but, rather, was prepared to take the matter to court if Tyler did not provide a satisfactory response in the near term.  It was Tyler that extended the discussions, requesting multiple extensions of time to conduct its "investigation."  It was VBC that, growing weary of the delays, granted its **final** extension with the admonition that "**If we don't make progress by next week, we will have no choice but to file our lawsuit**." (Tyler's Complaint Herein, Exhibit 5.)

If Tyler did not believe that VBC was prepared to file its Complaint in its chosen forum, why did Tyler bother to request extensions in the first place?  Surely Tyler considered itself free to take its time if no filing was imminent.  Moreover, how can Tyler claim that it did not consider the threat of litigation imminent while making (irrelevant) allegations about VBC's litigious nature in its Complaint and Opposition. (Tyler's Complaint Herein, ¶ 13; Opposition at 2.)

### III. THE CASE LAW CLEARLY SUPPORTS DISMISSAL

In its Motion, VBC showed that the forum-selections clause (apparently executed by an individual Tyler has acknowledged to be its employee) is sufficient basis alone to transfer the case. More importantly, 5th Circuit law is clear that when a Declaratory Judgment action is filed under circumstances such as these, it is anticipatory and should be dismissed in favor of the true plaintiff's

later-filed action. VBC will not rehash all of its arguments here, except to reiterate that, while the *Trejo* factors apply (and, as VBC showed, weigh heavily in favor of dismissal), where a first-filing is clearly anticipatory, that may be treated as a dominant factor in the evaluation. *See Mill Creek Press*, 2004 U.S. Dist. LEXIS 31100 at 22-23 ("Courts will generally not allow a party to select its preferred forum by filing an action for a declaratory judgment when it has notice that another party intends to file suit involving the same issues in a different forum") (citing *909 Corporation v. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990)); *see also Lexington Ins. Co. v. Rolison,* 434 F. Supp. 2d 1228 ("While not dispositive, the fact that Lexington filed an anticipatory declaratory judgment action . . . immediately upon learning that Rolison was planning a lawsuit of his own favors abstention"); *see also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d at 602 ("'[T]here can really be no dispute that Mission expected Puritan to file suit if its claim was denied, and this suit was in anticipation of that expected action. The district court therefore acted within its discretion in considering the anticipatory nature of this suit").

Tyler's repeated reliance on *Poly-America, L.P. v. Stego Industries, L.L.C.*, 694 F. Supp. 2d 600, 605 (N.D. Tex. 2010) in opposition is entirely inapposite. In *Poly-America*, there was no imminent threat of litigation on the part of the defendant. The dispute had dragged on in a somewhat nebulous form for nearly two years prior to Poly-America filing its complaint. Indeed, Stego had previously filed a successful motion to dismiss an earlier Declaratory Judgment complaint on the basis that there was no case in controversy, and continued to argue such with respect to the new complaint at issue in the motion ruled on in the cited decision. Stego never filed its own affirmative action in another forum at all, even after the two declaratory-judgment filings by Poly-America.

### IV. CONCLUSION

Here, the threat of VBC's filing was clear, and imminent on a date certain. Tyler's complaint, filed after duplicitous promises that it merely needed time to investigate VBC's allegations, is anticipatory and should be dismissed. To do otherwise, "would penalize [the injured party] for its attempt to make a good faith effort to resolve this dispute out of court." *Mill Creek Press, supra.*

Respectfully submitted,

LEWIS, BRISBOIS, BISGAARD & SMITH, LLP

 _/s/ Russell W. Heald_____
RUSSELL W. HEALD TBA#09326700
550 Fannin, Suite 800
Beaumont, Texas 77701
409/838-6767 (T)      409/838-6950 (F)
Russell.Heald@lewisbrisbois.com

**ATTORNEYS FOR DEFENDANT,
VBCONVERSIONS LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record in this case and all other parties entitled to same in accordance with the Federal Rules of Civil Procedure and/or by CM/ECF filing system on this 16 day of June, 2014.

 _/s/ Russell W. Heald_____
RUSSELL W. HEALD